## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DAVID JOSEPH HODSON,

                                        Civil No. 22-079 (JRT/ECW)

                    Plaintiff,

v.

                                        **MEMORANDUM OPINION AND ORDER**
UNITED STATES OF AMERICA,                **GRANTING DEFENDANT'S MOTION TO**
                                        **DISMISS**

                    Defendant.

---

David Joseph Hodson, Reg. No. 73931-065, FMC Rochester, PMB 4000, Rochester, MN 55903, *pro se* plaintiff.

Gregory G. Brooker, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendant.


David Joseph Hodson ("Hodson") brings this action against the United States of America ("the United States") under the Federal Tort Claims Act ("FTCA"), alleging that on January 14, 2020, he was illegally involuntarily medicated in violation of his due process rights and sexually assaulted while an inmate at FMC Rochester. After voluntarily dismissing the complaint, Hodson seeks to reopen the case. The United States moves to dismiss the Motion to Reopen on the grounds that it fails to comply with the briefing order timeline. Alternatively, the United States moves to dismiss both claims for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for summary judgement on the sexual assault claim. Because Hodson's voluntary dismissal does not comport with

the federal rules and is thus not required, Hodson's Voluntary Dismissal Notice and subsequent Motion to Reopen are denied as moot. However, the Court will grant the United States' Motion to Dismiss because, even presuming subject-matter jurisdiction over Hodson's claims, he has failed to state a claim upon which relief can be granted. The Court will deny the United States' alternative Motion for Summary Judgment as moot.

**BACKGROUND**

**FACTS**

Hodson is currently an inmate at FMC Rochester under a civil commitment order pursuant to 18 U.S.C. § 4243. (Compl. at 1, Jan. 12, 2022, Docket No. 1.) In the complaint, Hodson alleges that leading up to the January 14, 2020 incident, he was in a seclusion unit. (*Id.*) Then, on January 14, 2020, Hodson covered the cell windows and camera with paper products. (*Id.*) In response, the seclusion housing unit lieutenant ordered a use of force team to extract Hodson to another cell with video surveillance. (*Id.*) Hodson's clothing was then removed, and he was subject to three injections before the extraction team left his cell. (*Id.*) Following the departure, Hodson alleges that an unknown member

of the extraction team entered the cell with his penis exposed and sodomized him.  (*Id.*)

The member of the extraction team then left the cell.  (*Id.*)[1]

**PROCEDURAL HISTORY**

Hodson filed a "US-95" concerning the alleged sexual assault with the appropriate

agency six months prior to filing his complaint.  (*Id.* at 2.)[2]  On January 12, 2022, Hodson

filed the instant complaint, containing the two claims that he was illegally involuntarily

medicated and sexually assaulted.  (*Id.* at 1.)

The United States filed a Motion to Dismiss or alternatively, a Motion for Summary

Judgment.  (Def.'s Mot. Dismiss, Mot. Summ. J., May 2, 2022, Docket No. 23.)  In support

of this motion, the United States submitted nine declarations from staff at FMC

Rochester.  (Def.'s Decls., May 2, 2022, Docket Nos. 27-35.)  The United States argues that

---

[1] While the Court recognizes that at the motion to dismiss stage the Court treats the plaintiff's facts as true, *see Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007), the United States' memorandum and declarations helpfully supplement the facts.  The United States asserts that the calculated use of force team that entered Hodson's cell consisted of five people who were then accompanied by a nurse practitioner, psychiatric RN, camera operator, and a confrontational avoidance person.  (Def.'s Mem. Supp. Mot. Dismiss at 29–30, May 2, 2022, Docket No. 24.)  The team entered Hodson's cell at 10:42 A.M., and at 4:35 P.M., Hodson verbally reported an allegation of sexual assault to a housing unit officer.  (*Id.* at 31.)  In a subsequent interview with Lt. Trevor Farley, Hodson said he was sexually assaulted immediately after being involuntarily administered medication and falling asleep.  (*Id.*)

[2] The Department of Justice website notes that a Standard Form 95 is used to present claims against the United States under the Federal Torts Claims Act for alleged wrongdoing caused by a federal employee within the scope of employment.  The Department of Justice, Documents and Forms,  https://www.justice.gov/civil/documents-and-forms-0  (last visited November 7, 2022).  The United States also refers to a "Regional Administrative Remedy Appeal" filed on August 24, 2020, where Hodson alleges he was sexually assaulted on January 14, 2020.  (Def.'s Mem. at 34.)

both claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that the FTCA does not waive sovereign immunity for Hodson's constitutional tort of due process violations. (Def.'s Mem. Supp. Mot. Dismiss at 10–12, May 2, 2022, Docket No. 24.) Even if the sexual assault claim does fall within the Court's jurisdiction, the United States argues that Hodson's claim should still be dismissed because Hodson fails to plead enough facts to make it plausible that the unknown officer was acting within the scope of his employment or that the alleged sexual assault itself is plausible. (*Id.* at 13.) Alternatively, the United States argues the Court should grant summary judgment on the sexual assault claim because there are no genuine disputes as to any material facts. (*Id.* at 3–4.)

Magistrate Judge Becky Thorson ordered any response to the United States' motion by Hodson be due on or before June 17, 2022. (Briefing Order at 1, May 10, 2022, Docket No. 39.) Hodson filed his response on May 11, 2022, placing a large emphasis on the two cameras with views of his cell. (Pl.'s Resp. to Def.'s Mot. at 1, May 11, 2022, Docket No. 40.) Hodson also stated that he "did not intend for the forced medication to be anything more than a factual statement" and instead views it in conjunction with the ultimate alleged sexual assault after the medication was administered. (*Id.* at 2.) In a subsequent letter to the Court, Hodson characterizes the forced medication issue not as a constitutional claim but as being "unnecessarily administered without legal authority." (Pl.'s 2nd Resp. to Def. Mot. at 1, May 11, 2022, Docket No. 42.) As for the scope of

employment issue, Hodson asserts that the foreseeability of the sexual assault can be established by considering the power dynamic and the Bureau of Prisons' (BOP's) policies to prevent sexual assault of inmates. (*Id.* at 2.) Hodson, as a *pro se* litigant, emphasizes his need to proceed to discovery to adequately address the issues raised by the United States in its motion.

On June 9, 2022, Hodson filed a letter stating that he is "no longer interested in pursuing this any further." (Pl.'s Voluntary Dismissal Notice at 1, June 9, 2022, Docket No. 45.) In response, the United States sought a dismissal of the case without prejudice. (Def.'s Reply at 1, July 1, 2022, Docket No. 46.) But before the United States sought dismissal, Hodson filed another letter requesting that the Court "excuse [his] request to 'drop' the case" as the request was the result of a mental health episode. (Mot. to Reopen at 2, June 30, 2022, Docket No. 47.) The Court treats this letter as a Motion to Reopen. The United States responded to Hodson's Motion to Reopen by stating that it violated the Court's briefing order with the June 17 deadline, and thus it should not be considered by the Court. (Def.'s Resp. to Mot. to Reopen at 3, Aug. 8, 2022, Docket No. 54.) If the filings are considered, the United States argues that Hodson's filings fail to meet his burden in responding to the Defendant's Motion to Dismiss or, in the alternative, the Motion for Summary Judgement. (*Id.* at 3–4.) Thus, the United States again asks the Court to dismiss the constitutional tort claim and dismiss the sexual assault claim, or in the alternative, grant Summary Judgment. (*Id.* at 5.)

Hodson subsequently filed multiple letters and a reply to the United States'
response to the Motion to Reopen, in addition to motions for discovery, requests for
depositions, and amended complaints.[3]

## DISCUSSION

### I.    MOTION TO REOPEN

Federal Rule of Civil Procedure 41(a)(1) allows a plaintiff to dismiss an action
without a court order by filing "a notice of dismissal before the opposing party serves
either an answer or a motion for summary judgment," or "a stipulation of dismissal signed
by all parties who have appeared."  Fed. R. Civ. P. 41(a)(i–ii).  In ordinary civil cases, a
notice of dismissal that complies with the rule operates as a matter of right upon notice
to the court, and permission of the court is not required.  *Safeguard Business Sys., Inc. v.
Hoeffel,* 907 F.2d 861, 863 (8th Cir. 1990).  The effect of a voluntary dismissal under Rule
41(a) is "to render the proceedings a nullity and leave the parties as if the action had
never been brought."  *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996) (quoting *Smith
v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995)).  Additionally, "the jurisdictional effect of such

---

[3] Hodson's most recent amended complaint alters the remedies he seeks to one dollar,
three packages of cigarettes, a white lighter, MDMA therapy to treat his PTSD, and any additional
relief this court deems just, proper, and equitable.  (Pl.'s Mot. Amend Compl. at 2, Nov. 3, 2022,
Docket No. 77-1.)  Hodson also filed an amended motion for discovery seeking only the camera
footage from the cell he was extracted to on January 14, 2020, for one hour in each direction of
the cell extraction event.  (Pl.'s Amend. Mot. Discovery, Nov. 3, 2022, Docket No. 78.)  However,
since the Court will grant Defendant's Motion to Dismiss, the Court will deny these motions as
moot.

-6-

a voluntary dismissal deprives the court of any power to adjudicate the withdrawn claim."
*Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995).

Here, Hodson filed his Voluntary Dismissal Notice on June 9, *after* the United States
had filed an answer to Hodson's complaint on May 2.  Therefore, voluntary dismissal is
not required.  *See* Fed. R. Civ. P. 41(a)(2) (once an answer has been filed, an action *may*
be dismissed at the plaintiff's request only upon order of the court upon proper terms
and conditions) (emphasis added); *see also Safeguard Bus. Sys., Inc. v. Hoeffel*, 907 F.2d
861, 863 (8th Cir. 1990) (plaintiff has no right to a voluntary dismissal if plaintiff's request
for dismissal comes after defendant's answer or motion for summary judgment).  The
United States agreed that the case should be voluntarily dismissed on July 1, but that
response came after Hodson's request to reopen on June 9 and does not constitute a
stipulation signed by both parties.  *see Martin v. Larson*, No. 21-CV-412 (ECT/JFD), 2022
WL 1138439, at *3 (D. Minn. Mar. 24, 2022), *report and recommendation adopted*, No.
21-412, 2022 WL 1138001 (D. Minn. Apr. 18, 2022) (explaining that Rule 41(a)(1)(A)(ii)
provides that a plaintiff may dismiss an action without a court order by filing a stipulation
of dismissal signed by all parties who have appeared. While a signed stipulation is not
always interpreted literally, the Court may, in its discretion, determine the necessary
conditions for a stipulation).

Because the United States filed its Motion to Dismiss and alternative Summary
Judgment Motion prior to Hodson's voluntary dismissal, the Court finds that Hodson has

no right to a voluntary dismissal and such dismissal will not be given effect.  Thus, the Court need not consider the timeliness of Plaintiff's Motion to Reopen nor the jurisdictional effect of the voluntary dismissal.  *See* Fed. R. Civ. P. 41(a)(2) ("Except as provided in 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").  Effectively, the Court denies Hodson's Voluntary Dismissal and subsequent Motion to Reopen as moot and will decide the merits of the United States' Motion to Dismiss.

## II.  SUBJECT-MATTER JURISDICTION UNDER 12(B)(1)

### A.  STANDARD OF REVIEW

"Subject matter jurisdiction ... is a threshold requirement which must be assured in every federal case."  *Turner v. Armontrout,* 922 F.2d 492, 493 (8th Cir.1991).  A court's lack of subject matter jurisdiction may be raised at any time by a party to an action, or by the court *sua sponte.  See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims."  *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013).  In a facial attack, the Court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th

Cir. 2015) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  In a facial challenge to jurisdiction, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  The court "determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005) (internal citations omitted).

### B.  CONSTITUTIONAL TORT CLAIM

"The United States may be held liable for negligent or wrongful acts by federal employees committed while acting within the scope of their employment under the FTCA." *Washington v. Drug Enf't Admin.*, 183 F.3d 868, 873 (8th Cir. 1999).  Specifically, 28 U.S.C. § 1346(b) grants federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity.  *Id.*  The United States "is liable to the same extent that a private person under like circumstances would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *Id.; see also* 28 U.S.C. § 2674 (1994).  The "law of the place" refers to the substantive law of the state where the wrongful conduct took place.  *See FDIC v. Meyer,* 510 U.S. 471, 477–78 (1994).  However, state law cannot provide liability for the violation of a federal constitutional right and thus constitutional wrongs cannot be

remedied through the FTCA. *Washington*, 183 F.3d at 873. Instead, constitutional tort claims may be brought under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). *Id.*

Here, Hodson claims a constitutional tort by a United States employee by alleging that he was illegally involuntarily medicated in violation of his due process rights.[4] Due process violations are constitutional claims. Thus, they cannot be remedied under the FTCA. *See id* at 873–74 (explaining that because the United States' sovereign immunity under the FTCA is not waived for constitutional torts, such claims are not cognizable under the FTCA); *see also FDIC v. Meyer,* 510 U.S. at 477–78. Thus, the Court does not have jurisdiction to hear Hodson's constitutional tort claim, and the Court will grant the United States' Motion to Dismiss as to this claim.[5]

---

[4] There is a question of whether this issue is moot because Hodson states that he did not intend for the assertion of an involuntary medication to be considered as a separate claim, but instead a factual statement that supports the sexual assault claim. (Pl.'s Resp. to Mot. to Dismiss at 2, May 11, 2022, Docket No. 40). Still, the Court will consider the forced medication claim as initially alleged in the Complaint.

[5] Hodson has alternatively characterized this claim as an abuse of process under Minnesota state law in a letter to the court. (Pl.'s Letter at 1, August 31, 2022, Docket No. 62.) The relevant FTCA section allows abuse of process claims against the United States. *See* 28 U.S.C. § 2680(h) (stating that the Court has jurisdiction over claims of abuse of process by investigative or law enforcement officers). However, even if Hudson's claim could be construed as one for abuse of process, it fails for failure to state a claim. Under Minnesota law, abuse of process requires two central elements: (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not. *Duerscherl v. Foley,* 681 F. Supp. 1364, 1369 (D. Minn. 1987); *see Malcolm v. NPD, Inc.*, No. 05-960, 2007 WL 1847200, at *6 (D. Minn. June 21, 2007) (citing relevant Minnesota case law concerning the proper standard). Hodson's "abuse of process" claim does not do more than list the claim; it provides no factual allegations that would satisfy the above elements.

**C. SEXUAL ASSAULT CLAIM**

Whether the Court has jurisdiction to hear Hodson's claim of sexual assault depends on whether the federal employee alleged to have committed the assault acted within the scope of employment. *See Gutierrez de Martinez v. Lanagno*, 515 U.S. 417, 423 (1995) ("In determining the extent of the government's FTCA liability, '[s]cope of employment' sets the line"); *Primeaux v. United States*, 181 F.3d 876, 878 (8th Cir. 1999). The FTCA makes actionable claims for liability for negligent conduct of "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Government liability does not extend to intentional torts, but section 2680 lists several exceptions to this, including relevantly when the intentional tort is committed by "investigative or law enforcement officers." The language states:

"The provisions of this chapter and section 1346(b) of this title shall not apply to —

….

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: ***Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising … out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.** For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is

empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

28 U.S.C. § 2680(h) (emphasis added). This section of the FTCA cross references section 1346(b), making the scope of employment requirement applicable to intentional torts committed by law enforcement officers of the United States. Additionally, "the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Millbrook v. United States*, 569 U.S. 50, 57 (2013). Whether a government employee is acting within the scope of their employment is governed by the law of the state where the incident occurred. *See Eubank v. Kan. City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010) (applying "the substantive law of the State where the act or omission occurred"). Thus, when an intentional tort is alleged to have been committed by an investigative or law enforcement officer, government liability depends on the scope of employment test of the applicable state law.

In Minnesota, the test for whether an employee's actions fall within their scope of employment hinges on foreseeability. *See Fahrendorff ex rel. Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905 (Minn. 1999). "[J]ust because an employee's ultimate actions may be motivated by personal gratification and prohibited by the employer does not mean that those actions fall outside the scope of employment as a matter of law." *Id.* at 911. Rather, "it is a question of fact whether the employee's acts were foreseeable,

related to, and connected with acts otherwise within the scope of his employment." *Id.*

In *Fahrendorff*, where worker at a group home sexually assaulted an occupant, the

Minnesota Supreme Court found that expert testimony alleging that inappropriate sexual

behavior or abuse of power is a well-known risk in the group home industry was sufficient

to establish foreseeability. *Id.* at 907, 912–13. The party asserting foreseeability must

typically provide expert evidence or affidavits. *See P.L. v. Aubert*, 545 N.W.2d 666, 668

(Minn. 1996) (finding that because no expert evidence or affidavits were offered to show

that sexual relationships between student and teacher are a "well-known hazard," there

was no foreseeability).

Here, Hodson does not offer any evidence that a sexual assault committed by a

BOP officer against an inmate is a well-known risk at federal medical centers. He does

however offer his own response to the foreseeability issue, stating that "foreseeability is

clearly established when the power-dynamic is taken into account" and that "the BOP has

specific policies and rules regarding the handling of inmates as to prevent the foreseeable

risk of sexual assault." (Pl.'s Letter at 2, May 11, 2022, Docket No. 42.) However, Courts

are reluctant to use evidence of specific policies against the alleged conduct of the

defendant as evidence that establishes the foreseeability of the act. *See Frieler v. Carlson*

*Marketing Group, Inc.*, 751 N.W.2d 558, 584 (Minn. 2008) (holding that the fact an

employer proactively adopts a specific policy to prevent harassment does not raise an

issue of fact with respect to foreseeability of harassment in the workplace). Absent

evidence, often from an expert, that inappropriate sexual behavior is a well-known hazard for interactions between BOP officers and inmates, there is no foreseeability. While BOP officers have power and authority over inmates and sexual assault surely does occur within federal institutions, no testimony or affidavits were presented by Hodson to attest to these possibilities. Thus, the Court finds that Hodson has not alleged enough to establish that the alleged sexual assault was within the BOP officer's scope of employment.

The Court concludes Hodson's claim of sexual assault is barred by the FTCA law enforcement provision because Hodson fails to offer evidence that the BOP officer acted within the scope of their employment during the alleged assault. Therefore, Hodson has not established that the Court has subject-matter jurisdiction over Hodson's sexual assault claim, and it is dismissed pursuant to Rule 12(b)(1). The Court acknowledges, however, that Hodson's status as a pro se prisoner greatly hinders his ability to provide expert testimony on the foreseeability issue. Further, the Court takes note of the prevalence of sexual assaults in prisons. Thus, despite the Court's finding that it has no subject-matter jurisdiction in this case, to the extent jurisdiction is presumed, the Court will also analyze the remaining claims filed by the government.

### III.  FAILURE TO STATE A CLAIM UNDER 12(B)(6)

In reviewing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint

states a "'claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must

allege more than "'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555)).  Although the Court accepts

the complaint's factual allegations as true, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678.   "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility,'" and therefore must be dismissed.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court construes the complaint in the light most favorable to the plaintiff, drawing all

inferences in their favor.  *Ashley Cnty., Ark. V. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

While the Court is normally limited to the pleadings when considering a 12(b)(6)

motion, it may properly consider materials that are necessarily embraced by the

pleadings.  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.

2004).  Such materials include "documents whose contents are alleged in a complaint and

whose authenticity no party questions."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

The United States moves to dismiss Hodson's sexual assault claim under Rule 12(b)(6) on the grounds that the complaint makes nothing more than conclusory statements and fails to allege that the BOP tortfeasor acted within the scope of his employment.

Viewing the evidence in a light most favorable to Hodson, Hodson's complaint clearly lacks sufficient factual detail.  While Hodson's claim that a member of the extraction team sexually assaulted him properly puts the United States on notice that the alleged conduct was committed by this narrow pool of possible tortfeasors, this bare allegation is unsupported.  Hodson hinges his complaint on video footage that shows the alleged assault.  In looking to materials outside the complaint that are necessarily embraced by the pleadings, the United States provides declarations stating that no conduct occurred in the aftermath of the involuntary medication.  The presence of video footage could potentially support either party, but Hodson's pleadings or responses to these declarations fall short of supporting a plausible inference that the footage shows the alleged sexual assault.  Even when considered in a light most favorable to Hodson, the assertion of possible video footage at best may serve as Hodson pleading facts that are "merely consistent with a defendant's liability," but it does not cross "the line between possibility and plausibility."  *Twombly*, 550 U.S. at 557; *see Stone v. Harry*, 364 F.3d 912,

914 (8th Cir. 2004) (observing that pro se complaints, though liberally construed, must allege sufficient facts to support claims).

Moreover, the scope of employment issue proves dispositive here.  While Hodson appears to plead facts that make his claim conceivable, Hodson does not allege facts plausibly showing foreseeability to establish that the alleged BOP tortfeasor acted within the scope of their employment.  As described above, Hodson fails to offer any testimony or other affidavits that establish such alleged conduct is a well-known hazard.   While Hodson's argument about foreseeability largely hinges on the uneven power dynamic between BOP officials and inmates, and that assertion may be true, "no expert testimony or affidavits were presented regarding the potential for abuse of such power in these situations; thus there can be no implied foreseeability."  *Aubert*, 545 N.W.2d at 668.

Because Hodson fails to plead sufficient facts that allow the Court to draw a reasonable inference that the United States is liable and that the alleged BOP tortfeasor acted within their scope of employment, Hodson fails to state a claim under which relief may be granted.  The Court will thus grant the United States' Motion to Dismiss the sexual assault claim under Rule 12(b)(6).

## CONCLUSION

In sum, because Hodson's Voluntary Dismissal Notice came after the United States' answer to Hodson's complaint, voluntary dismissal is not required under Federal Rule of Civil Procedure 41 and thus the Court will deny the dismissal and subsequent Motion to

Reopen as moot.  Further, because the Court lacks subject-matter jurisdiction over Hodson's claims given the foreseeability issue, the Court will grant the United States' Motion to Dismiss.[6]  However, even if the Court presumes jurisdiction given Hodson's inability to develop expert testimony and the prevalence of sexual assault in prisons, Hodson claim still fails because it lacks sufficient detail to allege that the BOP tortfeasor acted within the scope of his employment.  Because the Court grants the United States' Motion to Dismiss, its Motion for Summary Judgment is denied as moot.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Hodson's Motion to Reopen [Docket No. 47] is **DENIED as moot**;

2. Plaintiff Hodson's Motion to Alter/Amend/Supplement Pleadings [Docket No. 58], Motion for Discovery [Docket Nos. 63 and 65], Motion for Discovery Time Extension [Docket No. 64], Motion for Emergency Injunctive Relief [Docket 67], Motion to Amend Complaint [Docket No. 77], and Amended Motion for Discovery [Docket No. 78] are **DENIED as moot**; and

3. Defendant United States' Motion to Dismiss or alternative Motion for Summary Judgment [Docket No. 23] is **GRANTED in part** and **DENIED in part**.  The Motion to

---

[6] Should Hodson wish to bring his sexual assault claim again, he will need to provide evidence of foreseeability.

Dismiss is **GRANTED without prejudice** and the Motion for Summary Judgment is

**DENIED as moot.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  February 7, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge